IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APACHE INDUSTRIAL UNITED, INC., *Plaintiff* <br><br> v. <br><br> JEREMY LICHTERMAN; GARY MARTIN; SPECIALTY CONTRACTING SERVICES TECHNOLOGIES, LLC, *Defendants* | CIVIL ACTION <br><br> NO. 23-4096 |

MEMORANDUM

**Baylson, J.**                                                                        February 2, 2024

### I.     FACTUAL ALLEGATIONS

Plaintiff Apache Industrial United works in industrial services—scaffolding, insulation, coating and linings, fireproofing, refractory, abatement, forming and shoring, tank maintenance, and technical services. Amend. Compl. ¶¶ 10, ECF 12. Defendants Jeremy Lichterman and Gary Martin began working for Apache in July 2020. Id. at ¶¶ 11, 14. As a regional manager for insulation services, Lichterman was responsible for the firm's insulation compliance with the National Environmental Policy Act (NEPA) in Pennsylvania. Id. at ¶ 13. Martin, a Senior Estimator, was responsible for estimates and proposals for NEPA insulation projects. Id. at ¶ 16. In their roles, both Defendants received confidential information, including details of Apache contracts with customers, customer lists, monthly profit and loss reports, and Apache rates for service. Id. at ¶¶ 17–18.

In 2021, Lichterman and Martin bid on, and won two contracts on behalf of Apache. In the Target Building Construction Inc. contract ("Target contract"), Apache provided asbestos abatement. Id. at ¶¶ 19–22. By October 2022, the contract was worth $3,415,565.00. Id. In the Hospital of University of Pennsylvania contract ("HUP contract"), Apache performed insulation

1

maintenance on an as-needed basis. Id. at ¶¶ 24–25. HUP issued maintenance orders that Apache fulfilled. Id. at ¶ 25. Lichterman and Martin had access to all data and information related to these projects. Id. at ¶ 29.

On October 27, 2022, Lichterman and Martin announced they were leaving Apache to go work for Defendant Specialty Contracting Services, a firm that also provides construction services. Id. at ¶¶ 30–31. Their last day was set for November 11. Id. at ¶ 32. Then, on November 3, Lichterman asked to move up his final day to Friday, November 4. Id. at ¶ 33. Apache agreed and also advanced Martin's last day to that Friday. Id. at ¶ 35.

During their final month of employment with Apache, Lichterman and Martin did not submit any proposals, which was inconsistent with their past performance. Id. at ¶¶ 36–38. At the same time, Martin and Lichterman emailed Apache clients from Specialty email addresses, writing they were "looking forward to working together" and asking the Apache clients to "send everything" to Lichterman's Specialty email moving forward. Id. at ¶¶ 49–54. Then, over the weekend immediately following Lichterman and Martin's departure, all of Apache's workers on the Target and HUP projects quit to begin working for Specialty on Monday, November 7. Id. at ¶ 39. On that same Monday, Specialty began providing Target and HUP identical services, with the same workers, as Apache previously performed. Id. at ¶ 44. As a result, Apache estimates $860,000 in damages for losing work on both contracts. Id. at ¶¶ 65–66.

## II. PROCEDURAL BACKGROUND

On October 24, 2023, Apache brought this suit against Defendants Lichterman, Martin and Specialty. Apache alleges Lichterman and Martin breached their duty of loyalty to Apache by working for Specialty, including disclosing Plaintiff's confidential information and helping Specialty usurp the firm's clients, while still under Apache's employ. Amend. Compl. at ¶¶ 87–

89. Apache alleges all Defendants tortiously interfered with Apache's clients by using Apache's confidential information to wrest the HUP and Target contracts from Apache. Id. at ¶¶ 78–80.

Defendants filed motions to dismiss on December 22, 2023 (Lichterman and Martin) and December 26, 2023 (Apache). Defs. Lichterman and Martin Mot. to Dismiss, ECF 15; Def. Apache Mot. to Dismiss, ECF 16. Plaintiff's response and Defendants' replies followed. Pl. Resp. Lichterman and Martin, ECF 24; Pl. Resp. Apache, ECF 23; Defs. Lichterman and Martin Reply, ECF 24; Def. Specialty Reply, ECF 26.

### A. Party Contentions

Lichterman and Martin make two arguments. First, they argue Apache failed to allege that any existing or prospective contractual arrangement ended with HUP or Target and, even if it did, Defendants did not act tortiously by providing new contact information and recruiting Apache's at-will employees. Defs. Lichterman and Martin Mot. to Dismiss at 6–11. Second, they contend both of Apache's claims boil down to common law breach of confidentiality torts, which the Pennsylvania Uniform Trade Secrets Act (PUTSA) forecloses. Defs. Lichterman and Martin Mot. to Dismiss at 11–13. Specialty argues the alleged facts do not plausibly show Specialty harbored an "intent to harm" Apache's contracts with HUP or Target. Def. Specialty Mot. to Dismiss at 6–7.

Plaintiff responds that Lichterman and Martin's alleged use of confidential information to win Apache's existing HUP and Target contracts plausibly states tortious interference, that PUTSA does not preempt its common law claims because the Complaint did not allege the information constituted "trade secrets," and Specialty knew of Apache's existing contracts when it began servicing Target and HUP, which suffices the mens rea element for tortious interference. Pl. Resp. Lichterman and Martin 2–7; Pl. Resp. Specialty 3–4.

3

### III. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the same time, the Third Circuit favors substance over form—"a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (internal citations and quotations omitted).

### IV. DISCUSSION

This Court has jurisdiction because the parties are in complete diversity and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). This memorandum will address the tortious interference and duty of loyalty claims in turn.

#### A. Tortious Interference

In Pennsylvania, tortious interference with a contract lies when a party "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract." Empire Trucking Co. v. Reading Anthracite Coal Co., 71 A.3d 923, 932 (Pa. Super. 2013) (quoting Walnut St.

4

Assoc., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. 2009) aff'd, 20 A.3d 468 (Pa. 2011)). There are four elements:

   (1) A contract exists between the plaintiff and a third party;

   (2) The defendant intended to harm the plaintiff by interfering with the contract;

   (3) The defendant was not justified in his interference; and

   (4) The plaintiff suffered damages as a result.

Walnut St., 982 A.2d at 98. The "intent to harm" element is no more nefarious than an intention to interfere with the contractual relationship. Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1182–83 (Pa. 1978).

    The thornier question sprouts from the absence of privilege or justification element because "in most cases the defendant's intentional conduct is done 'at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff.'" Phillips v. Selig, 959 A.2d 420, 430 (Pa. Super. 2008) (quoting Glenn v. Point Park College, 272 A.2d 895, 899 (Pa. 1971). The "central inquiry is whether the defendant's conduct is sanctioned by the 'rules of the game' which society has adopted." Id. When the defendant is a competitor, breaking the rules means the conduct was "actionable for a reason independent from the claim of tortious interference itself." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 215 (3d Cir. 2009).

    Apache has alleged sufficient facts that Specialty intended to interfere with the HUP and Target contracts.[1] Specialty hired Lichterman and Martin, the Apache employees directly

---

[1] Specialty only challenged the second element of the tortious interference claim. As such, this Court will only address the argument in front of it. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

In Reply, Specialty protests that it objects to every element of the tortious interference claim. Def. Specialty Reply at 2, 6. Moreover, Specialty labors under the erroneous belief that it is this Court's role to sua sponte dismiss claims under 12(b)(6). Id. at 2–3. Sua sponte dismissals are the exception, not the rule, and only appropriate when "the basis is apparent from the face of the complaint." Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002). This is not such a

responsible for acquiring and maintaining those contracts. And on their first day of work at Specialty, Specialty began servicing the same contracts. Based on the alleged timing, it is more than plausible that Specialty knew Apache was servicing HUP and Target, and intentionally sought to acquire that business from them, satisfying intent. See Adler, 393 A.2d at 1182–83.

Apache's tortious interference claim against Martin and Lichterman will also proceed to discovery. First, Apache sufficiently pled existing contracts. The Amended Complaint, which controls at this stage, clearly states that Apache "entered into a written contract" with Target and "acquired [the HUP] contract." Amend. Compl. at ¶¶ 20, 23. In addition, Apache worked, pursuant to both agreements, for Target and HUP from 2021 until November 7, 2022, when Lichterman and Martin brought the work to Specialty. Id. at ¶¶ 22, 27. 44. At that point Apache lost the contracts. Id. at ¶ 48. While Defendants parse language in the Complaint—i.e. Lichterman and Martin "took active contracts away from Apache and brought these contracts to their new employer"—to signify an absence of contract, the exact opposite inference is plausible. Defs. Lichterman and Martin Mot. to Dismiss at 7 (emphasis in original). Admitting Apache had "active contracts" means Defendants acknowledge Plaintiff alleged contracts existed.[2]

Second, PUTSA does not preempt Apache's claims. Defendants are correct that PUTSA, which "create[d] a statutory cause of action for injunctive relief, compensatory damages and

---

case. Further, despite Specialty's attempt to restyle its original motion, the plain text speaks for itself—the firm exclusively argued the "intent to harm" element. Def. Specialty Mot. to Dismiss at 2, 6–7. And it is well-settled that a Defendant may not raise a new argument in its Reply. See, e.g., Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998); Atl. Power & Elec. Co. v. Big Jake, 583 F. Supp. 3d 631, 642 (D.N.J. 2022); Cornell Univ. v. Illumina, Inc., 2013 WL 3216087, at *4 (D. Del. June 25, 2013), report and recommendation adopted, 2014 WL 12601516 (D. Del. Sept. 29, 2014).

[2] Even if this Court were to accept Defendants' argument, Apache adequately pled a "reasonable expectation of continued contractual relationships" with HUP and Target, save Defendants' conduct. Advanced Fluid Sys., Inc. v. Huber, 28 F. Supp. 3d 306, 337 (M.D. Pa. 2014), aff'd, 958 F.3d 168 (3d Cir. 2020). Tortious interference is viable not only concerning an existing contract, but also with a prospective one so long as plaintiff has a "reasonable likelihood or probability" of acquiring it. Glenn, 272 A.2d at 898–99. Considering its history of performance before the contracts' sudden and acute terminations, Apache had "more than a mere hope," but a reasonable belief, in continued business with HUP and Target. Acumed, 561, F.3d at 213.

exemplary damages for the actual loss caused by misappropriation of trade secrets," preempted common law tort claims derived from misappropriating trade secrets. Youtie v. Macy's Retail Holding, Inc., 626 F. Supp. 2d 511, 521–22 (E.D. Pa. 2009) (O'Neill, J.). However, whether information constitutes a "trade secret" is not clear-cut, but rather requires a multi-factor factual determination. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (listing six factor analysis). Thus, when a plaintiff has not alleged trade secrets, as here, this Court has followed the "vast majority of courts" and found it is inappropriate to leap to this factual conclusion before discovery. Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc., 2011 WL 6046923, at *5 (E.D. Pa. Dec. 6, 2011) (Baylson, J.) (collecting cases).

Bearing in mind that PUTSA is not preemptive, Apache plausibly alleges that Lichterman and Martin's interference was improper. Specifically, Martin and Lichterman had access to Apache's confidential information related to the HUP and Target contracts—they bid and serviced them. The facts alleged allow a plausible inference that they exploited such information to peel the contracts away from Apache, while still employed by the firm. Plaintiff alleges that Lichterman and Martin exhibited inconsistent and deficient behavior in their last month, they asked to move their termination date up, began emailing Apache clients from Specialty email addresses before November 4, and triggered an exodus of employees and these two contracts immediately upon leaving. If true, that conduct could run afoul of the "rules of the game" because "no public interest is served in condoning use of confidential information" to woo existing customers. Walnut, 20 A.3d at 476 (quoting Adler, 393 A.2d at 1185).

**B. Breach of Loyalty**

The duty of loyalty requires an employee "act with the utmost good faith in the furtherance and advancement of the interests of" his employer. Ozburn-Hessey Logistics, LLC v. 721

7

Logistics, LLC, 13 F. Supp. 3d 465, 480 (E.D. Pa. 2014) (Restrepo, J.) (quoting Sylvester v. Beck, 178 A.2d 755, 757 (Pa. 1962)). While under employment, an employee "may properly inform customers of his current employer that he is leaving the employer to work elsewhere in the field, or start his own competing business," but he may not make "improper use of [his] employer's trade secrets or confidential information, usurp[ ] a business opportunity from the employer, or, in preparing to work for a rival business, solicit[ ] customers for such rival business." Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 414 (E.D. Pa. 2009) (citing Cornerstone Sys., Inc. v. Knickel Logistics, L.P., 255 Fed. App'x 660, 663-64 (3d Cir. 2007)).

Based on the same factual allegations, discussed supra, Apache plausibly alleged Defendants Lichterman and Martin breached their duty of loyalty by beginning to work for Specialty, including soliciting Apache customers, while still working for Plaintiff.

## V. CONCLUSION

For the foregoing reasons, Defendants motions to dismiss are **DENIED**. An Order will be forthcoming.[3]

O:\CIVIL 23\23-4096 Apache Indus v. Lichterman\Apache v. Lichterman MTD Memo FINAL.docx

---

[3] This Court also denies Lichterman and Martin's motion to strike some of Plaintiff's allegations and dismiss Plaintiff's request for punitive damages. The "standard for striking under Rule 12(f) is strict," and only granted when the allegations are "so unrelated to plaintiffs' claims as to be unworthy of any consideration as a defense." In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig., 583 F. Supp. 1388, 1400 (E.D. Pa. 1984) (Giles, J.) (quoting EEOC V. Ford Motor Co., 529 F. Supp. 643, 644 (D. Col. 1982)). The sentences Lichterman and Martin take issue with are clearly related to Plaintiff's claims and do not meet this threshold. Regarding punitive damages, at this early stage of litigation, this Court cannot conclude whether or not Defendants' actions amounted to willful misconduct.